IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MCS INDUSTRIES, INC.**<br>2280 Newlins Mill Road<br>Easton, Pennsylvania 18045<br><br>           **PLAINTIFF,**<br><br>**V.**<br><br>**SHOPRITE SUPERMARKETS, INC.,**<br>505 Division Street<br>Elizabeth, NJ 07207<br><br>And<br><br>**WAKEFERN FOOD CORP.**<br>505 Division Street<br>Elizabeth, NJ 07207<br><br>           **DEFENDANTS.** | CIVIL ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION - COMPLAINT**

Plaintiff, MCS Industries, Inc. ("MCS"), by and through its counsel, hereby files this Complaint for patent infringement against Defendants, Wakefern Food Corp. ("Wakefern") and ShopRite Supermarkets, Inc. ("ShopRite").

**I.      PARTIES**

1.      Plaintiff, MCS Industries, Inc. ("MCS"), is a corporation existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 2280 Newlins Mill Road, Easton, Pennsylvania 18045.

2.      Defendant, ShopRite Supermarkets, Inc. ("ShopRite") is a wholly owned subsidiary of Defendant Wakefern Food Corp. which, owns and operates retail stores, conducts

sales activities and otherwise does business in this judicial district. Upon information and belief, Defendant ShopRite is a corporation established and existing under the laws of New Jersey, with a designated agent for Intellectual Property located at 505 Division Street, Elizabeth, NJ 07207. Upon information and belief, ShopRite's corporate headquarters is located at 5000 Riverside Drive, Keasbey, NJ 08832.

3. Defendant, Wakefern Food Corp. ("Wakefern") is a corporation which, owns and operates retail stores, conducts sales activities and otherwise does business in this judicial district. Upon information and belief, Defendant Wakefern is a corporation established and existing under the laws of New Jersey, with a designated agent for Intellectual Property located at 505 Division Street, Elizabeth, NJ 07207. Upon information and belief, Wakefern's corporate headquarters is located at 5000 Riverside Drive, Keasbey, NJ 08832.

4. Wakefern has been named in this complaint as it represents itself as supplying its wholly owned subsidiaries:

> ShopRite Supermarkets, Inc. and PRRC, Inc. with products and services, allowing them to operate supermarkets under the trademarked names ShopRite® and Price Rite®. Of the more than 250 ShopRite stores located across New York, New Jersey, Pennsylvania, Connecticut, Delaware, and Maryland, 33 of these are owned and operated by ShopRite Supermarkets, Inc. PRRC, Inc. operates its more than 50 Price Rite stores in Connecticut, Massachusetts, New York, Pennsylvania, Rhode Island, Maryland and Virginia. There are two member-owned Price Rite stores, located in Camden and Garfield, NJ.

*See* ShopRite / Wakefern webpage attached hereto as **Exhibit "A."**

5. Moreover, upon information and belief, the infringing conduct described herein is not solely limited to ShopRite retail locations and is also occurring at Wakefern, Price Rite and/or PRRC, Inc. retail locations.

6. Hereinafter, Wakefern and ShopRite are collectively referred to as "Defendants"

2

## II.     JURISDICTION AND VENUE

7.     This action arises under the Patent Laws of the United States, specifically Title 35 of the United States Code.

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) as this is a civil action relating to patents.

9.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because:

   a.     ShopRite has a regular and established place of business in this judicial district, at least due to the presence of its nineteen (19) stores located in Philadelphia County; and (*See* Ex. A.)

   b.     Upon information and belief, ShopRite has committed multiple acts of infringement in this judicial district by selling and offering for sale the Infringing Product (as defined in Paragraph 23 of this Complaint).  (*See* by way of example a true and correct copy of receipts evidencing purchases of the Infringing Product from ShopRite's stores located in Pennsylvania and New Jersey attached hereto as **Exhibit "B."**)

10.     This Court has personal jurisdiction over both ShopRite and Wakefern because they have transacted business and otherwise conducted sales activities in this district, have a regular and established place of business in this district, and upon information and belief, have committed, contributed to, and induced acts of patent infringement in this district.

## III.     FACTS COMMON TO ALL COUNTS

11.     MCS owns a portfolio of patents covering over-the-door mirrors and over-the-door hanging apparatus, including United States Patent No. 8,534,627, United States Patent No. 8,746,644, and United States Patent No. 9,480,350 (collectively, the "Patents-in-Suit").

12. On September 17, 2013, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 8,534,627 (the "'627 Patent"), entitled "Over-the-Door Hanging Apparatus." (*See* a copy of the '627 Patent attached hereto as **Exhibit "C."**)

13. On June 10, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 8,746,644 (the "'644 Patent"), entitled "Over-the-Door Hanging Apparatus." (*See* a copy of the '644 Patent attached hereto as **Exhibit "D."**)

14. On November 1, 2016, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 9,480,350 (the "'350 Patent"), entitled "Over-the-Door Hanging Apparatus." (*See* a copy of the '350 Patent attached hereto as **Exhibit "E."**)

15. MCS owns all right, title, and interest in and to the Patents-in-Suit.

### MCS Licensing of the Patents-in-Suit

16. MCS is in the business of designing, developing, licensing, manufacturing, and selling frames and other hanging products, including an over-the-door mirror that embodies the inventions claimed in the Patents-in-Suit.

17. MCS considers its over-the-door mirror a signature product and has invested substantial resources in developing said over-the-door mirror and protecting the same.

18. By way of example, MCS licenses the Patents-in-Suit and/or wholesales the products protected by the Patents-in-Suit to Walmart and Home Depot.

19. By way of example, one of MCS's authorized sellers is Walmart, which sells MCS's over-the-door mirror, for approximately $15.

**ShopRite's Patent Infringement**

20. ShopRite is a retailer whose business includes selling, offering for sale, and/or importing into Pennsylvania a variety of consumer products, specifically including within this judicial district, and elsewhere within the United States.

21. According to Wakefern's website, there are over 250 ShopRite and over 50 Price Rite stores in the United States. (*See* Ex. A.)

22. Moreover, Wakefern acts as a wholesaler which "serves its domestic and international wholesale customers with a broad product offering, private label brand development expertise, a first-class warehousing and distribution network, exceptional procurement power and a comprehensive knowledge of the retail environment." (*See* Ex. A.)

23. ShopRite offers for sale a "Studio Concepts Over-the-Door Mirror" for $9.99 (hereinafter the "Infringing Product") as a 'back-to-school' item for the buying period which runs from July 1 through Labor Day. (*See* Ex. B; *see also* photographs of the Infringing Product attached hereto as **Exhibit "F."**)

24. On July 31, 2017 and on August 9, 2017, Plaintiff's agent purchased the Infringing Product from ShopRite for $9.99. (*See* Ex. B.)

25. Upon information and belief, the infringing product was available in most, if not all, of ShopRite's locations, Price Rite's locations, and on a wholesale basis from Wakefern for independent retailers throughout its distribution network.

26. Upon information and belief, ShopRite and/or Wakefern intentionally copied the patented product and then offered it at a drastically reduce price during the back to school season in order to drive traffic to its stores to generate profits at the Plaintiff's expense.

5

27. The Infringing Product was available for sale in ShopRite's retail location in Pennsylvania and New Jersey. *See* Ex. B.

28. Upon information and belief, ShopRite, Price Rite, and/or Wakefern continues to sell the Infringing Product at its retail locations and on a wholesale basis to other retailers.

29. As evidenced by the attached claims chart, ShopRite's Infringing Product is virtually identical to the Patents-in-Suit. (*See* a true and correct copy of the Claim Charts attached hereto as **Exhibit "G."**)

30. In fact, upon information and belief, the Infringing Product was manufactured using the specifications of the Patents-in-Suit and/or by copying MCS' commercially available over-the-door mirror (which is manufactured in accordance with said specifications of the Patents-in-Suit), as the Infringing Product being sold by ShopRite is a slavish copy of the preferred embodiment of the invention as illustrated in the Patent-in-Suit.

31. By way of example, the reproduction of the "coke bottle" shape of the mounting plate, together with its two rectangular holes for the bracket assembly and screw holes on alternating sides, is an **<u>exact copy</u>** of the design in the Patents-in-Suit. *Compare* Ex. C, Ex. F, Ex. G.

32. Accordingly, upon information and belief, the Infringing Product is a willful and deliberate copy not only of the inventions claimed in the Patents-in-Suit, but also of the exemplified preferred embodiment disclosed therein.

33. Upon information and belief, ShopRite and/or Wakefern knowingly, willfully, recklessly, and/or deliberately infringed and/or contributed to the infringement of the Patents-in-Suit.

34. Upon information and belief, ShopRite and/or Wakefern knowingly, willfully, recklessly, and/or deliberately failed to conduct adequate due diligence to determine whether the Infringing Product infringes any existing patents, namely patents owned by MCS, before manufacturing, purchasing, and/or selling the product.

35. Upon information and belief, ShopRite and/or Wakefern knowingly, willfully, recklessly, and/or deliberately failed to conduct adequate due diligence to determine whether its supplier had a license to manufacture and distribute the Infringing Product before ShopRite and/or Wakefern purchased and/or sold the product.

### IV.     DAMAGES AND REQUEST FOR PERMANENT INJUNCTION

36. Defendants' sale of the Infringing Product constitutes literal infringement of one or more claims of the Patents-in-Suit and has and will continue to damage Plaintiffs.

37. MCS seeks an award of damages to compensate it for Defendants' infringement.

38. MCS further seeks to permanently enjoin Defendants from infringing the Patents-in-Suit as MCS is suffering irreparable harm, including but not limited to, harm caused to its reputation and to the value of its patents because MCS's properly licensed sellers have vigorously complained about the price erosion being caused Defendants' unlawful sales.

39. Defendants' sales of the Infringing Product at drastically discounted prices are damaging the market and MCS's ability to commercialize the inventions of the Patent-in-Suit, including eroding the market and price for the inventions claimed in the Patents-in-Suit.

40. Accordingly, if Defendants are not permanently enjoined, MCS will suffer irreparable harm in the form of lost market share, permanent price erosion, goodwill, harms and losses for which there is no adequate remedy at law.

**Defendants have Eroded the Market Price for MCS' Inventions**

41. By way of example only, Walmart, which is a lawful customer / licensee of MCS, retails a mirror based on the Patents-in-Suit for approximately $15.

42. ShopRite offered the Infringing Product for $9.99, or a 33% discount to what Walmart and other authorized sellers charge. This is causing immediate and irreparable harm to MCS requiring an injunction to be entered, precluding ShopRite from further selling or marketing the infringing products at issue.

43. Upon information and belief, ShopRite and/or Wakefern sold thousands of units of the Infringing Product through their nationwide wholesale and retail distribution network at a price of $9.99 or less.

44. As a result, Walmart and other licensees of the Patents-in-Suit have contacted MCS demanding to know why another retailer is able to sell the product at or near the item's manufacturing cost, as such sales are causing injury to both MCS and its licensed sellers.

45. Additionally, in response to the $9.99 price point, other licensees are pressuring MCS to offer price points so that they can sell the mirror for a price that matches ShopRite's, thus eroding the value of a license under the Patent-in-Suit and other MCS patents.

46. Defendants' sale of the Infringing Product, for a price that is at or near the item's manufacturing cost, has and continues to erode the market price for MCS' Patents-in-Suit.

47. Further, upon information and belief, Defendants' marketing and sale of the Infringing Product for $9.99, has and continues to dissuade consumers from purchasing the product from lawful MCS customers and licensees for approximately $15.

**MCS Will Suffer Immediate and Irreparable Harm if Defendants are not Enjoined**

48. The over-the-door mirror is a "back-to-school" item that is heavily marketed during the late summer / early fall retail season to individuals going away to college and decorating their dorm rooms.

49. As a result, approximately 50% of the mirror's annual sales occur between July and September.

50. Defendants' which are primarily food retail stores selling the Infringing Product as a seasonal item supports the notion that the item is associated with back-to-school season.

51. Defendants' infringing sale of the Infringing Product during the back-to-school season, at a significantly discounted price, has and continues to result in lost sales for MCS' lawful licensees.

52. These lost sales have resulted in disputes between MCS and its lawful licensees / customers, which has and continues to deteriorate the goodwill developed by MCS in the market and with its licensees / customers.

53. Moreover, because the back-to-school season ends in August / September, Defendants must be enjoined immediately.

**Defendants' Infringement is Egregious**

54. The Infringing Product is almost an identical copy of the exemplified preferred embodiment illustrated in the Patents-in-Suit.

55. As set forth above, upon information and belief, Defendants and/or its suppliers created the product by directly copying from MCS' Patents-in-Suit and/or by copying MCS' commercially available over-the-door mirror (which is manufactured in accordance with said illustrations of the Patents-in-Suit).

56. MCS intends to seek discovery on the issue of willfulness and reserves all of its rights to seek a finding of willfulness regarding Defendants' acts of infringement prior to the filing of this Complaint with respect to the Patents-in-Suit and/or post-suit acts of infringement with respect to the Patents-in-Suit.

57. MCS seeks that this Court grant: (1) enhanced damages up to treble the amount found or assessed; (2) declare this case "exceptional" and award Plaintiffs their reasonable attorneys' fees; and (3) grant MCS such other relief as is just and proper.

## COUNT I

## DIRECT INFRINGEMENT OF THE PATENTS-IN-SUIT

58. Plaintiff hereby incorporates by reference all of the paragraphs of this Complaint as though fully set forth herein at length.

59. Through its sale, offer for sale, use, and/or importation of the Infringing Product in Pennsylvania, including within this judicial district, and elsewhere within the United States, Defendants have directly infringed the Patents-in-Suit under 35 U.S.C. § 271(a) and will continue to do so unless enjoined by this Court.

60. The Infringing Product embodies the inventions set forth in one or more claim of each of the Patents-in-Suit, including without limitation, as set forth in the attached claim charts. *See* Ex. G.

61. As a result of the aforesaid acts, Defendants have damaged, and are continuing to damage, MCS.

62. Upon information and belief, as set forth more fully above, Defendants are deliberately and willfully infringing the Patents-in-Suit with full knowledge of the Patents-in-Suit, rendering this case "exceptional" under 35 U.S.C. § 285.

63. MCS has suffered monetary damages as a result of the infringing actions of Defendants with respect to the Patents-in-Suit.

64. As set forth more fully above, MCS has suffered and continues to suffer irreparable harm, for which there may be no adequate remedy at law, unless enjoined by this Court.

65. Upon information and belief, Defendants will continue to infringe the Patents-in-Suit unless enjoined by the Court.

## COUNT II

### INDUCED INFRINGEMENT OF THE PATENTS-IN-SUIT

66. Plaintiff hereby incorporates by reference all of the paragraphs of this Complaint as though fully set forth herein at length.

67. Defendants have induced and continues to induce the direct infringement of the Patent-in-Suit by its customers and suppliers by, among other activities: (1) advising, encouraging, and intending for its retail customers to assemble and use the Infringing Product, which infringes the Patents-in-Suit; (2) advising, encouraging, and intending for its wholesale customers to retail, assemble, and use the Infringing Product, which infringes the Patents-in-Suit; and (3) advising, encouraging, and intending for its suppliers to manufacture and/or import the Infringing Product into the United States, which infringes the Patents-in-Suit.

68. By engaging in and continuing to engage in the aforesaid acts, Defendants had the specific intent to induce the infringement of the Patents-in-Suit and are therefore liable under 35 U.S.C. §271(b).

69. As a result of the aforesaid acts, Defendants have damaged, and are continuing to damage, MCS.

70. Upon information and belief, as set forth more fully above, Defendants are deliberately and willfully infringing the Patents-in-Suit with full knowledge of the Patents-in-Suit, rendering this case "exceptional" under 35 U.S.C. § 285.

71. MCS has suffered monetary damages as a result of the infringing actions of Defendants with respect to the Patents-in-Suit.

72. As set forth above, MCS has suffered and continues to suffer irreparable harm as set forth above, for which there may be no adequate remedy at law, unless enjoined by this Court.

73. Upon information and belief, Defendants will continue to infringe the Patents-in-Suit unless enjoined by the Court.

## COUNT III

## CONTRIBUTORY INFRINGEMENT OF THE PATENTS-IN-SUIT

74. Plaintiff hereby incorporates by reference all of the paragraphs of this Complaint as though fully set forth herein at length.

75. Defendants have contributed, and continue to contribute, to the direct infringement of the Patents-in-Suit by its customers by, among other activities, offering to sell or by selling within the United States the Infringing Product, knowing that the Infringing Product to be especially made or especially adapted for use in infringing the Patents-in-Suit when assembled and/or used.

76. The Infringing Product, including its components, are not staple articles or commodities of commerce suitable for substantial noninfringing use. The Infringing Product, and components thereof, have no substantial noninfringing uses because they cannot be used, in any practical sense, for purposes other than causing and/or contributing to the infringement of the Patents-in-Suit.

77. By engaging in and continuing the aforesaid acts, Defendants have the specific intent to contribute to the infringement of the Patents-in-Suit and are therefore liable under 35 U.S.C. §271(c).

78. As a result of the aforesaid acts, Defendants have damaged, and are continuing to damage, MCS.

79. Upon information and belief, as set forth above, Defendants are deliberately and willfully infringing the Patents-in-Suit with full knowledge of the Patents-in-Suit, rendering this case "exceptional" under 35 U.S.C. § 285.

80. MCS has suffered monetary damages as a result of the infringing actions of Defendants with respect to the Patents-in-Suit.

81. As set forth above, MCS has suffered and continues to suffer irreparable harm, for which there may be no adequate remedy at law, unless enjoined by this Court.

82. Further, Defendants have eroded the market price of the Patents-in-Suit.

83. Upon information and belief, Defendants will continue to infringe the Patents-in-Suit unless enjoined by the Court.

## V. PRAYER FOR RELIEF

As a result of and in light of the foregoing, MCS respectfully requests that the Court find in its favor and against Defendants ShopRite and Wakefern, and that the Court grant MCS the following relief:

   a) A judgment in favor of MCS that Defendants have directly infringed the Patents-in-Suit, and/or that Defendants have indirectly infringed the Patents-in-Suit by

way of inducing and/or contributing to the direct infringement by its suppliers and/or customers;

b) A permanent injunction, pursuant to 35 U.S.C. § 283, enjoining Defendants and their officers, directors, agents, affiliates, employees, installers, branches, subsidiaries and parent entities, and all others acting in active concert therewith, from infringing, inducing the infringement of, or contributing to the infringement of the Patents-in-Suit;

c) An award to MCS of damages adequate to compensate MCS for Defendants' acts of infringement, together with pre-judgment and post-judgment interest thereon;

d) A declaration by this Court that this is an exceptional case and including an award to MCS of their reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

e) Any and all further relief that this Court deems just and proper.

## VI.     JURY DEMAND

MCS hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues so triable.

                                                 Respectfully submitted,

                                                 **BOCHETTO& LENTZ, P.C.**

Date: August 9, 2017                 By:      _____/s/ Gavin P. Lentz_____
                                                        Gavin P. Lentz, Esquire, (Pa. 53609)
                                                         Anton Kaminsky, Esquire, (Pa. 322660)
                                                         **BOCHETTO & LENTZ, P.C.**
                                                         1524 Locust Street
                                                         Philadelphia, PA 19102
                                                         (215) 735-3900
                                                         glentz@bochettoandlentz.com
                                                         akaminsky@bochettoandlentz.com
                                                         *Attorneys for Plaintiff*